490 A.2d 231

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Howard Stuart MYERS.**

**Misc. (BV) No. 15, Sept. Term, 1984.**

Court of Appeals of Maryland.

April 8, 1985.

Melvin Hirshman, Bar Counsel and Kendall Calhoun, Asst. Bar Counsel, to Attorney Grievance Comm'n of Maryland, Annapolis, for petitioner.

Robert E. Cahill, Sr., Baltimore, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ.

COUCH, Judge.

Howard Stuart Myers has been a member of the Bar of this State since 1972. In 1981, he promised to represent a client in several matters, including the drafting of a will. The will Myers prepared would later be found by a trial judge to be incomplete because of its lack of an attestation clause and witness signature lines; nevertheless, Myers sent this document to his client for her signature with the understanding that the will was valid.

Eventually, the client developed misgivings about the will. This led to a confrontation in which the lawyer harshly rebuked his client in language sprinkled with invective. A complaint arising out of the incident was lodged against Myers with the Attorney Grievance Commission, and an investigation followed.

The inquiry panel conducting the investigation disclosed that the will Myers prepared was defective. The panel also determined that Myers had attempted to mislead and deceive it, and recommended the filing of charges. The Review Board agreed and the Attorney Grievance Commission, acting through Bar Counsel, filed a petition in this Court for disciplinary action against Mr. Myers.

We referred the matter, pursuant to Maryland Rule BV 9(b), to Judge Leonard S. Jacobson, Circuit Court for Baltimore County. After conducting an evidentiary hearing, Judge Jacobson concluded that Myers violated certain provisions of the Code of Professional Responsibility, namely Disciplinary Rules 1–102(A)(1), (4), (5), and (6), and DR 6–101(A)(3).[1]

We agree with the findings of Judge Jacobson and order that Howard S. Myers be suspended from the practice of law for three years.

## I

The events surrounding Myers' relationship with his client, as well as Myers' attempt to divert the commission in its investigation, were fully described by Judge Jacobson in his findings of fact.[2]

"Debra Ann Beach (Beach) entered into an agreement with Ralph Rolf (Rolf) whereby the latter would advance certain sums of money for Beach to acquire her estranged husband's interest in certain real estate, which would then

---

1. Disciplinary Rules 1–102 provides in pertinent part as follows:
   "Misconduct.
   (A) A lawyer shall not:
      (1) Violate a Disciplinary Rule.
      (4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
      (5) Engage in conduct that is prejudicial to the administration of justice.
      (6) Engage in any other conduct that adversely reflects on his fitness to practice law."
   Disciplinary Rule 6–101 provides:
   "Failing to Act Competently.
   (A) A lawyer shall not:
      (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
      (2) Handle a legal matter without preparation adequate in the circumstances.
      (3) Neglect a legal matter entrusted to him."
2. All references to the supporting authority for the trial court's findings have been omitted.

be placed on the market for sale. When the property was sold, Rolf was to receive repayment of the monies advanced by him, plus an additional fixed sum to compensate Rolf for his loan.

In order to formalize their agreement, Rolf recommended that the Respondent Myers be consulted as their attorney. Myers was then living with but not married to Rolf's ex-wife, Gloria Rolf, and maintained an office for the practice of law in his home.

On Easter Sunday, 1981, Beach met Rolf, by prearrangement, at a gas station on Joppa Road and rode with Rolf to Myers' home, where the agreement between Rolf and Beach was discussed. During the meeting at Myers' home, Beach discussed with Myers the preparation of her Last Will and Testament, as well as the agreement with Rolf, so that her son would be protected if she died before the house was sold. The conference was concluded and Rolf returned Beach to her automobile.

Shortly thereafter, a settlement conference was held at Central Savings Bank in Baltimore City for the purpose of transferring Beach's husband's interest in the property to her. This conference was attended by Beach, Myers, Rolf, Beach's husband and others. At this meeting, Beach agreed to engage Myers to handle her divorce, and Beach and Myers discussed a fee, and agreed on $350.00 for all of Myers' services, including the Will at $50.00.

On July 8, 1981, Beach received from Myers, in the mail, the original and a copy of a two page document entitled Last Will and Testament which bore no signature lines for witnesses nor any attestation clause. The Will was accompanied by a note instructing Beach to sign the original Will and return it to Myers, which she did the next day. The mail which Beach received contained a copy of a letter written for Beach by Myers which is unrelated to any of the matters under consideration here.

Aside from several telephone conversations relating to minor matters concerning Rolf's obligations to Beach, the

next significant event in the Beach-Myers relationship occurred in the following October or November when Beach contacted Myers about certified mail which she had received relating to Rolf's failure to make certain payments which he was required to do under the Rolf-Beach agreement. During this conversation, Beach also told Myers about a traffic ticket on which she was to stand trial in Howard County. Myers offered to represent Beach in the traffic hearing over some objection by Beach that she and her boyfriend had concluded that she did not need representation. In any event, Myers did appear with Beach in the District Court and it was on this occasion that Beach learned for the first time that her Will was not properly executed, since it lacked the necessary number of witnesses. It is not clear from the evidence how this discovery came about, there being a conflict in the testimony of Beach at the hearing in this Court and Myers' testimony at the panel inquiry, and no independent testimony supporting either version of the discovery. It is clear, however, that from that day forward the Beach-Myers relationship began to deteriorate.

That deterioration was enhanced when Beach finally notified Myers in April, 1982 that her property had been sold, a settlement date had been scheduled and that she did not want either Myers or Rolf to attend the settlement. That conversation, in which Beach claims that Myers spoke to her in a vulgar and unprofessional manner, caused Beach to complain to the Attorney Grievance Commission, later reduced to a formal written complaint on May 13, 1982.

Myers discovered the date, time and place of the property settlement and appeared at the meeting with Rolf, obviously now representing Rolf's interest for the purpose of obtaining payment from the settlement of monies due Rolf in accordance with the Beach-Rolf agreement.

An unpleasant confrontation between Beach and Myers took place at this meeting at which Beach obtained the original copy of her Will and stated that she would send Rolf his money at a later date. Rolf was ultimately paid in

full, but Myers was not paid his fee and later sued Beach in the District Court.

The District Court trial resulted in judgment in favor of Myers for fees due in connection with the Beach-Rolf transaction, but the Court did not award judgment for the $50.00 fee for the preparation of the Will.

On this evidence, this Court finds as a fact that the Will prepared for Beach by Myers which was sent to her in July, 1981 did not, at least when sent to her, have an attestation clause or witness signature lines attached.

In the meantime, the Commission sent Myers a copy of Beach's formal complaint to which Myers responded on June 16, 1982. That response was sent by the Commission to Beach, who, in turn wrote to the Commission commenting on Myers' response by further elaborating on the details of her complaint in a letter dated June 25, 1982, but not received by the Commission until July 13, 1982. Myers further responded by letter of August 3, 1982. On August 6, 1982, James F. Kennedy (Kennedy), an investigator for the Commission contacted Myers informally about the complaint. Myers responded to Kennedy's initial inquiry, but did not enclose a copy of the 'cover letter' which Myers claimed was attached to the Will he had mailed to Beach in July, 1981. Kennedy wrote to Myers on January 10, 1983, specifically requesting, among other things, that Myers provide him with 'a copy of your covering letter which you furnished Ms. Beach as to what needed to be done to have the will executed'. Myers answered by an undated letter, received by Kennedy on February 22, 1983 to which was attached a copy of the alleged cover letter to Beach dated July 14, 1981.

An inquiry panel was finally convened on March 1, 1984 and a transcript of that proceeding was filed in this case. At that hearing, Myers testified that the cover letter attached to his letter to Kennedy was but a retyped duplication of the letter he actually sent to Beach, because the actual carbon copy of the July 14, 1981 letter to Beach in

Myers' files was in a crumpled condition and, according to Myers, he did not want to send it to the Commission. Therefore, he claims he recreated the letter, typing mistakes and all. The crumpled letter was in evidence at the panel hearing and in this Court.

Gloria Rolf, who lives with Myers and occasionally does typing for him, testified in this Court that she typed the will, including a third but now missing page on which were an attestation clause and witnesses signature lines, that [the crumpled letter admitted into evidence] is a carbon copy of a letter she wrote for Myers to Beach which she accidently crumpled, and that she did not type the letter which Myers provided to Kennedy.

Katherine Mainolfi, a qualified document examiner called in rebuttal by the Commission, concluded after examination of [Myers' purported July 14, 1981 cover letter to Beach] and [the crumpled letter], that they were typed simultaneously, the latter given to Kennedy being a carbon copy of the former. This Court reaches the same conclusion based upon its own examination of the two letters and finds, as a fact, that Myers testified falsely at the inquiry panel hearing concerning these two exhibits, and misrepresented [the July 14, 1981 letter] as a copy of his cover letter to Beach in his response to Kennedy received on February 22, 1983."

The court then made the following conclusions of law, based on its findings of fact:

"That Myers did violate Disciplinary Rule 6–101(A)(3) by neglecting to include an attestation clause and witness signature lines on the Will that he prepared for Beach, and that he negligently failed to properly instruct Beach as to the requirements of attestation set forth in Estates and Trusts Article, Section 4–102.

That Myers did violate Disciplinary Rule 1–102(A)(1), (4), (5) and (6) by violating Rule 6–101(A)(3) by misrepresenting and deceiving Kennedy that the letter he submitted to Kennedy as the 'covering letter' to Beach was in fact a copy of that letter when it was not, by testifying

falsely at the panel inquiry hearing concerning that letter, and by engaging in conduct in his relationship with Beach that adversely reflected upon his fitness to practice law."

We accept and adopt these findings as they are supported by clear and convincing evidence.

## II

█ Myers raises several exceptions to Judge Jacobson's findings, which we now address. Of course, the lower court's findings are prima facie correct and will not be disturbed on appeal unless clearly erroneous. *Attorney Griev. Comm'n v. Miller*, 301 Md. 592, 602, 483 A.2d 1281, 1287 (1984).

### *Exception 1*

Myers claims in this exception that the lower court erred in its factual finding that the will he sent to Beach did not contain an attestation clause or witness signature lines. We disagree.

During the hearing on the complaint, Judge Jacobson heard the testimony and observed the demeanor of several witnesses, including Beach, regarding the contents of the will. Based on Beach's testimony alone, the court could have concluded, had it believed this witness, that the will was lacking the required formalities. *Cf., Miller, supra,* 301 Md. at 602–03, 483 A.2d at 1287 (judge may base finding on testimony of single witness); *Attorney Griev. Comm'n v. Nothstein,* 300 Md. 667, 684, 480 A.2d 807, 816 (1984) (judge may pick and choose the evidence upon which to base his decision).

In this case, however, the court also had before it other evidence relating to the contents of the will, including Myers' fabricated letter and the transcript and findings of the commission investigation. This evidence provided further support for the court's factual conclusion that the will lacked an attestation clause and witness signature lines.

*Exceptions 2 and 3*

██ These exceptions challenge Judge Jacobson's legal conclusion that Myers violated DR 6–101(A)(3) in two respects. First, Myers states in exception 2 that it was error for the lower court to conclude that respondent's failure to include an attestation clause and witness signature lines amounted to a violation of DR 6–101(A)(3). In exception 3, Myers criticizes the court's additional legal conclusion under this disciplinary rule that he negligently failed to instruct Beach as to the requirements of attestation.

These exceptions are without merit. Once the lower court factually determined that the will was devoid of the attestation clause and witness signature lines, the legal conclusion that Myers violated DR 6–101(A)(3) necessarily followed. Failure to include the requisite provisions in a will, and neglecting to inform the client of these necessities, both constitute "neglect of [a] legal matter entrusted to [the lawyer]." DR 6–101(A)(3).

*Exception 4*

Myers contends in his last exception that the court improperly concluded that he violated DR 1–102(A)(6). He argues, contrary to Judge Jacobson's finding, that his conduct during this entire incident did not adversely reflect upon his fitness to practice law.

We disagree. Myers' concocted cover letter of July 14, 1981, which he presented at the commission investigation as a true copy of the letter sent to Beach, his false testimony concerning this missive, and his abusive treatment of his client, all justify a finding of a violation of DR 1–102(A)(6).

### III

██ In cases where the improper conduct of the lawyer involved misrepresentation, the severity of the sanction to be imposed for the misconduct depends upon the facts and circumstances of the particular case. *Attorney Griev.*

*Comm'n v. Babbitt,* 300 Md. 637, 642, 479 A.2d at 1372 (1984).

■ We believe that the proper sanction for Myers, considering the facts and circumstances of this case, is a three year suspension from the practice of law. The facts as found by Judge Jacobson indicate that Respondent prepared a defective will for his client and later excoriated her. After a complaint was filed against Myers with the Attorney Grievance Commission, Myers attempted to mislead an investigator and the inquiry panel by producing a fabricated cover letter which purported to inform Beach that the document required witnesses. After observing that the will was signed and dated a full week before the alleged cover letter was even sent, the panel and court below concluded that Myers had artlessly lied.

To this day, Myers has neither admitted nor asked pardon for his improper and unethical conduct. This recalcitrance, coupled with Myers' past reprimand by the Commission for incompetence, warrants the before mentioned suspension.

The facts of this case are similar to those found in *Attorney Griev. Comm'n. v. Sherman,* 295 Md. 229, 454 A.2d 359 (1983). There, the attorney made misrepresentations to a trial judge by disavowing his involvement in a client's criminal case. 295 Md. 229 at 230, 454 A.2d 359 at 360. Sherman later tried to conceal his misrepresentation by refunding the money his client had already paid him for the case. *Id.* at 236, 454 A.2d at 362–63. After noting that Sherman had previously been warned by the Commission for neglect and incompetence, a three year suspension was ordered. *Id.* at 240, 454 A.2d at 365.

■ In imposing a similar sanction upon Myers, we are mindful that disciplinary proceedings against an attorney are intended as protection to the public, not as punishment for the lawyer. *Attorney Griev. Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (and cases cited therein). As we have recognized on numerous occasions, suspension of the lawyer protects the public "because it demon-

strates to members of the legal profession the type of conduct which a court will not tolerate without sanction." *Attorney Griev. Comm'n v. Collins,* 295 Md. 532, 555, 457 A.2d 1134, 1145 (1983), quoting *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 596–97, 403 A.2d 1241, 1247 (1979).

Because we feel that our primary purpose of protecting the public will be served by a three year suspension, we conclude that Howard Stuart Myers should stand suspended from the practice of law in this State for that period beginning thirty days from the date this opinion is filed. He shall stand suspended beyond this period unless and until all costs incurred in connection with this proceeding are paid in full.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING ALL COSTS OF TRANSCRIPTS PURSU- ANT TO MARYLAND RULE BV15c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTOR- NEY GRIEVANCE COMMISSION AGAINST HOWARD STUART MYERS.