553 A.2d 722

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Mark Eugene WERNER, II.

Misc. (Subtitle BV) No. 9, Sept. Term 1988.

Court of Appeals of Maryland.

March 1, 1989.

Melvin Hirshman, Bar Counsel and Walter D. Murphy, Jr., Asst. Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

No argument on behalf of respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

PER CURIAM.

The Attorney Grievance Commission (Commission) through Bar Counsel filed a petition for disciplinary action

against the respondent, Mark Eugene Werner, II (Werner), alleging violations of the Disciplinary Rules of the Code of Professional Responsibility and Rules of Professional Conduct. Pursuant to Maryland Rule BV9b, this Court referred the matter to the Honorable Martin B. Greenfeld of the Circuit Court for Baltimore City. After Judge Greenfeld's lamentable passing, we designated the Honorable Ellen M. Heller, also of the Circuit Court for Baltimore City, to preside. After a hearing, Judge Heller filed a written memorandum as follows:

This opinion is in response to the petition for disciplinary action by the Attorney Grievance Commission of Maryland, filed on June 1, 1988, in the Court of Appeals of Maryland. A hearing on the merits was scheduled in this case on September 13, 1988, before the undersigned Judge. At the scheduled time of hearing, the only individual appearing was Walter D. Murphy, Jr., the Deputy Bar Counsel of the Attorney Grievance Commission of Maryland. Respondent had never filed a response to the petition, nor to any other of the filings in this case.[1] On August 10, 1988, an Order of Default was signed by the Honorable Martin B. Greenfeld. In particular, Respondent had never filed any answer to the Request for Admission of Facts and Genuineness of Documents.

### Complaint of Kenneth L. Kirkpatrick

### BC Docket No. 87–211–4–3

### *Findings of Fact*

In late December, 1981, Kenneth L. Kirkpatrick (Kirkpatrick) retained Mark Eugene Werner, II (Werner), to represent him in his claim for personal injuries resulting from an automobile accident on October 4, 1980, in Baltimore County. That accident involved an oncoming car that made a left-hand turn in front of the vehicle in which

---

1. Respondent admitted his negligence and did not appear at the Inquiry Panel hearing regarding Lynn Kirkpatrick.

Kirkpatrick was a passenger, which caused those two vehicles to collide. By July 1, 1982, Respondent had become aware that the liability carrier concerning the October 4, 1980, incident was State Farm. However, Werner never sent a demand letter to State Farm or had any contact with it on behalf of Kirkpatrick concerning the 1980 automobile accident. Moreover, Werner never filed suit in any court on behalf of Kirkpatrick for the personal injuries he sustained in the October 4, 1980, occurrence. Nevertheless, between January 1, 1983, and December 31, 1986, Respondent misrepresented to Kirkpatrick, on at least one occasion, that he had filed a lawsuit on his behalf concerning the October 4, 1980, occurrence.

On several occasions in 1981, 1982, and 1983, Werner instructed Kirkpatrick to send any medical bills that he had received pertaining to the 1980 accident. Kirkpatrick complied with this request and sent various medical reports and bills. Those medical bills were never paid by Respondent.

During 1983, the facts indicate that Respondent continued to neglect this case and failed to communicate adequately with Kirkpatrick. On at least two occasions, between January 1, 1983, and August 1, 1984, Werner misrepresented to Kirkpatrick that State Farm had proposed an offer of settlement. As indicated above, however, Respondent did not communicate with Kirkpatrick in any fashion nor with anyone on his behalf between September 1, 1984, and December 31, 1986.

On December 31, 1986, Kirkpatrick's complaint was received by Bar Counsel who sent it to Respondent on January 5, 1987, with a request for a response within 15 days. Respondent did not answer that letter nor a follow-up letter from Bar Counsel to Respondent, dated February 13, 1987. Nevertheless, on January 1, 1987, Werner called Kirkpatrick on the telephone and misrepresented to him that State Farm had offered $6,000.00 to settle his claims for personal injuries resulting from the October 4,

1980, occurrence. He indicated his attorney's fees in the case would be 25 percent. During that phone call, he also communicated that he was sorry for the delay in the handling of the matter, but that he had had a problem with his partner and landlord and had moved his law offices.

Although there was no response to Bar Counsel's communication, Werner had received a letter ... together with a copy of Kirkpatrick's Complaint.

Werner called Kirkpatrick again on January 10, 1987, and told him he would try to get the settlement offer of State Farm Insurance increased by a few hundred dollars. On or about February 1, 1987, Werner called Kirkpatrick and misrepresented to him that he had settled the case for $8,776.90 with State Farm Insurance Co. Pursuant to a prearranged appointment Kirkpatrick met with Werner in his law office on February 9, 1987. At that time, Werner misrepresented to Kirkpatrick that he had settled his claims for personal injuries for $8,776.90. At that meeting, Respondent also gave Kirkpatrick a check, which had been drawn against his own funds, in the amount of $5,590.30 and misrepresented to him that this was his net share, after expenses and the attorney's fees, of the settlement offer with State Farm. A settlement memorandum was prepared before or during the February 9, 1987, meeting.... Also, before or during this meeting, a release had been prepared. Werner presented the settlement memorandum to Kirkpatrick during that meeting. This memorandum is false and misleading on its face in that it indicates there had been a settlement with State Farm and attorney's fees paid to Respondent. In fact, Werner received no attorney's fees. At the February 9 meeting, Respondent also had Kirkpatrick sign the release. The release, as prepared by Respondent, is false and misleading in that it shows a settlement with the opposing parties involved in the accident. Kirkpatrick signed the release, as well as the settlement memorandum on February 9 during this meeting. At the

time of this February 9 meeting with Kirkpatrick, Werner knew that no offer had been made by State Farm Insurance Co. on the claims of Kirkpatrick.

In addition, during the February 9 meeting, Werner advised Kirkpatrick that he would promptly pay all outstanding medical bills totalling $1,276.90.... Indeed, on or about June 18, 1987, Werner called Amy Kirkpatrick (also known as Amy Betsy Imgard and Amy Besty), who had married Kenneth Kirkpatrick in June, 1984, and misrepresented to her that he paid all the medical bills as set forth in paragraph 19 of the Petition within five days after the February 9, 1987, meeting.

By February 20, 1987, Respondent had received a letter from Bar Counsel dated February 13, 1987, expressing concern over the lack of response to its previous letter.... On or about June 24, 1987, Richard C. Bauer, Jr., an investigator for the Attorney Grievance Commission, contacted Werner and arranged for an interview for July 8, 1987, concerning Kirkpatrick's complaint. On July 8, 1987, before meeting with Bauer, Respondent called Kirkpatrick and offered him an additional $5,000.00 and for the first time admitted he had not settled the accident case with any insurance company. Rather, he admitted he had made the $5,590.30 payment during the February 9 meeting.

Sometime after March 10, 1987, Respondent prepared a letter to Kirkpatrick, dated February 9, 1987.... Among other things, in that letter, Respondent admits "an inadvertent malpractice" and makes a settlement offer to Kirkpatrick. Moreover, Werner added language to the settlement memorandum after March 20, 1987, which had not been on the version of the same settlement memorandum which he had given to Kirkpatrick on February 9, 1987.

Werner met with Bauer on July 8, 1987. At that time, he misrepresented to Bauer that he had settled Kirkpatrick's claim against him for legal malpractice on February 9, 1987. To support this contention, Werner gave Bauer

a copy of the February 9, 1987, letter he had written to Kirkpatrick ... as well as the modified version of the settlement memorandum.... However, at no time before July 8, 1987, had Werner shown or given to Kirkpatrick, or anyone on Kirkpatrick's behalf, the version of the settlement memorandum....

## Conclusions of Law

Based on the facts recited above, this Court concludes as a matter of law that Respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)4, DR-1-102(A)5, DR 6-101(A)3, DR 7-101(A)(1), DR 7-102(A). In addition, the Court finds that Respondent has violated the following Rules of Professional Conduct: Rule 1.4(a), Rule 1.8(h), Rule 8.1(a), Rule 8.1(b), Rule 8.4(c), Rule 8.4(d).

## Complaint of Lynn Kirkpatrick

BC Docket No. 88-24-4-3

### Findings of Fact

On October 10, 1979, Lynn Ann Kirkpatrick (Ms. Kirkpatrick) was injured when she was struck by an automobile in a crosswalk in Towson, Maryland. Ms. Kirkpatrick is the sister-in-law of Kenneth L. Kirkpatrick. In October, 1981, Ms. Kirkpatrick retained Respondent to represent her in her claims for personal injuries resulting from this occurrence.... Respondent filed suit on behalf of Ms. Kirkpatrick in the Circuit Court for Baltimore County on October 8, 1982, against the owner and driver of the striking vehicle. The driver of the automobile was never served with the initial process in that action. The owner of the automobile was served sometime between February 24, 1984, and April 13, 1984.

On April 13, 1984, the owner of the vehicle responded, through counsel, with a Demurrer and a Plea, both of which were filed on April 13, 1984. Also on that date, counsel for the owner of the vehicle filed interrogatories

to be answered by Ms. Kirkpatrick. Those interrogatories were received by Werner by April 30, 1984.

On June 1, 1984, Respondent mailed a copy of the interrogatories to Ms. Kirkpatrick together with a letter instructing her to prepare a draft of the answers. On June 27, 1984, once again Respondent wrote to Ms. Kirkpatrick and asked her to send in the information needed to prepare the Answers to Interrogatories. On July 23, 1984, and on September 6, 1984, counsel for the owner of the vehicle wrote to Werner requesting Answers to Interrogatories. Respondent failed to respond to either of those letters, and the attorney filed a Motion for Sanctions on October 21, 1984. Ms. Kirkpatrick had long since supplied the necessary information to Respondent to enable him to prepare the Answers to Interrogatories and to have them filed. Respondent never advised Ms. Kirkpatrick of the Motion for Sanctions filed by the attorney for the owner of the vehicle. On October 31, 1984, the case against the owner of the vehicle was dismissed by Order of the Honorable Judge Cullen H. Hormes. On June 12, 1985, Respondent filed a Request for Reissuance of Summons as to the driver of the vehicle, Lynn Ann Steinle. That was the last paper filed in that proceeding by the Respondent.

In April, 1986, Werner misrepresented to Ms. Kirkpatrick that he had a pre-trial settlement conference that month and that he would have another such conference in June, 1986, with a trial by July or September, 1986.

In January or February, 1987, Respondent misrepresented to Ms. Kirkpatrick that he had a specific trial date of Friday, April 17, 1987 (Good Friday). On April 13, 1987, or Tuesday, April 14, 1987, Ms. Kirkpatrick called Respondent because she had not heard anything from him. At that time, Respondent misrepresented to her that the trial had been postponed until July 28, 1987.

On a number of occasions before September 15, 1987, Respondent misrepresented to Ms. Kirkpatrick that he was engaged in settlement negotiations. On September

15, 1987, Respondent called Kirkpatrick and misrepresented to her that a settlement had been offered in the amount of $7,800.00. In fact, Respondent had never conducted any negotiations with the insurer or with the attorney for the owner of the vehicle concerning her claims.

When Ms. Kirkpatrick and her husband confronted Werner in November, 1987, he admitted that there was no trial date and offered to settle the case with his own funds.

Of significance, Respondent had received correspondence from the Attorney Grievance Commission by August 20, 1987.... On September 24, 1987, he received a second letter from Bar Counsel indicating he had received no reply to the previous correspondence.... Respondent did not reply to either of these letters.

We agree with the circuit court that the respondent violated the following Disciplinary Rules and Rules of Professional Conduct: [2]

(1) DR 1–102(A)(4)—a lawyer shall not engage in dishonesty, fraud, deceit, or misrepresentation;

(2) DR 1–102(A)(5)—a lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(3) DR 6–101(A)(3)—a lawyer shall not neglect a legal matter entrusted to him;

(4) DR 7–101(A)(1)—a lawyer shall not intentionally fail to seek the lawful objectives of his client.

(5) DR 7–101(A)(2)—a lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

---

2. The Code of Professional Responsibility governed the conduct of attorneys in this State until January 1, 1987. From and after that date, the Maryland Rules of Professional Conduct applied, Md.Rule 1230. Respondent's dealings with Kirkpatrick began in late December, 1981. Those facts which support charges that occurred prior to January 1, 1987, are governed by the Code of Professional Responsibility. From and after that date, the Rules of Professional Conduct apply.

(6) DR 7-101(A)(3)—a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship;

(7) DR 7-102(A)(5)—representing a client, a lawyer shall not knowingly make a false statement of law or fact;

(8) Rule 1.1—a lawyer shall provide competent representation to a client;

(9) Rule 1.4—a lawyer shall keep a client reasonably informed about the status of a matter, and explain the matter to the extent necessary to enable the client to make informed decisions;

(10) Rule 1.8(h)—a lawyer shall not make an agreement limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement.

(11) Rule 8.1(a)—a lawyer in connection with a disciplinary matter shall not knowingly make a false statement of material fact.

(12) Rule 8.1(b)—a lawyer in connection with a disciplinary matter shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority.

Hence, there remains only the determination of an appropriate sanction. The Commission recommends that Werner be disbarred. In consideration of a sanction we are mindful of what we said in *Attorney Griev. Comm'n v. Myers*, 302 Md. 571, 579, 490 A.2d 231 (1985):

In cases where the improper conduct of the lawyer involved misrepresentation, the severity of the sanction to be imposed for the misconduct depends upon the facts and circumstances of the particular case.

Here the record shows Werner's gross neglect of two clients' cases, multiple misrepresentations, and failure to respond to Bar Counsel's request for information.

We observed in *Bar Ass'n v. Marshall*, 269 Md. 510, 519-20, 307 A.2d 677 (1973):

It must be borne in mind that the purpose of disciplinary actions such as this is not to punish the offending attorney, as that function is performed in other types of legal proceedings, but it is to protect the public from one who has demonstrated his unworthiness to continue the practice of law. When this unworthiness is shown to be present, as we conclude it is here, it becomes our sad duty, but nonetheless our obligation, to withdraw the privilege to practice law earlier granted by this Court. To fail to do so will impliedly represent to the public that the attorney continues to possess the basic qualities of honor traditionally associated with members of the bar of this State.

In this case, given the extent and frequency of Werner's misrepresentations over a long period of time, coupled with his gross neglect of the two cases and his failure to respond to Bar Counsel, it follows that we accept the recommendation of the Commission that Werner be disbarred. His name shall be stricken from the rolls of those authorized to practice law in this State.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MARK EUGENE WERNER, II.*