## THE PRINCE GEORGE'S COUNTY BAR ASSOCIATION *v.* VANCE

[Misc. Docket (Subtitle BV) No. 12, September Term, 1973.]

*Decided November 13, 1974.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*John A. Buchanan,* with whom was *Ronald A. Willoner* on the brief, for petitioner.

*Stephen H. Sachs,* with whom were *Elizabeth Logan Nilson* and *Donald B. W. Messenger* on the brief, for respondent.

LEVINE, J., delivered the opinion of the Court.

In 1948, respondent, James Franklin Vance, now 56 years of age, was admitted to the Bar of the District of Columbia and of the State of Arkansas. At that time, he was an officer in the U. S. Naval Reserve, having previously served on active duty from 1943 to 1946. He later served on active duty again for two years during the Korean war. When not on active duty, and while a member of the Naval Reserve, he was also a civilian employee of the Federal Government. In 1963, having completed 20 years of military service, he entered upon inactive status. In so doing, he established his qualification for retirement from the Naval Reserve at age 60. From 1964 until February 1973, he was employed as a civil servant with the Department of Defense as an instructor at its Computer Institute at the Navy Station Annex, located at Anacostia, adjacent to the Bolling Field Air Force Base in the District of Columbia.

Following his admission to the Maryland Bar in 1965, respondent undertook the part-time practice of law in Prince George's County where he had resided for a number of years. In 1972, he commenced to formulate plans for retirement from the Civil Service sometime during the year

1973, with the intention of simultaneously embarking upon the full-time practice of law. Although his retirement on February 26, 1973, closely followed the events which have led to these proceedings, there is nothing in the record to indicate that his timing was anything but a coincidence. With the commencement of his inactive status in 1963, one of the privileges which he surrendered, until attaining full retirement from the military at age 60, was access to the Post Exchange.

On or about December 30, 1972, respondent removed from a file cabinet, located in a nearby office at the Computer Institute, a carbon copy of a set of orders issued to one of the persons attending the school. He then erased the name of that subject, substituted his own and reproduced it on a copy machine so as to indicate that it was a copy of orders assigning him to active duty at the school. Thereafter, on two to four occasions over the next several weeks, he used these simulated orders to make minor purchases at a branch office of the Bolling Field Post Exchange. The total amount of these purchases ranged from $12 to $14, and effected for respondent a savings of about $1.00.

On the last occasion that such a purchase was made, respondent was detained by military authorities and was consequently charged in the Superior Court of the District of Columbia with violating Title 22, § 1401 of the District of Columbia Code, a statutory form of forgery.

Thereafter, the United States Attorney declined to prosecute, entering a *nolle prosequi,* but brought the matter to the attention of the Maryland State Bar Association. This action resulted in a hearing by a panel of three members of the Grievance Committee of the Prince George's County Bar Association (the Bar Association), and eventuated in the filing of "Charges" in this Court by that association. In accordance with Maryland Rule BV3 b, the charges were transmitted to the Circuit Court for Prince George's County, to be heard by a panel of three judges of the Seventh Judicial Circuit. Based upon a transcript of the proceedings before the Grievance Committee, including testimony of the

respondent, and additional testimony which he gave before the court, the panel concluded:

> ". . . [T]hat this act was relatively trivial, it was petty, picayune, undignified, immoral and dishonest, but it was not done in the performance of Mr. Vance's duties as a member of the Bar and had no direct relation to his practice of the law.
>
> "There has been some publicity, and undoubtedly the defendant has been subjected to a great deal of embarrassment. His attitude, unlike that of the defendant in the *Fellner* case, which was referred to in argument, 213 Md. 243, showed complete candor and forthrightness as to the act or acts that he had committed and, secondly, his remorse is most abject. We believe that not only was he completely frank about what was done but also that he is deeply sorry."

Thereupon, the circuit judges recommended that respondent "be reprimanded" because they were of the view that "the circumstances [did] not warrant more severe disciplinary action."

The matter reaches us on exceptions to that recommendation filed by the Bar Association pursuant to Rule BV5 b 2 and respondent's answer thereto. The thrust of the Bar Association's exceptions is that a reprimand would not be "an adequate sanction," and since the conduct of respondent was felonious, "fraudulent, deceitful and dishonest," disbarment is in order. In urging that respondent be disbarred, the Bar Association contends that he did commit the offense proscribed by Title 22, § 1401 of the District of Columbia Code, and was thus guilty of crimes involving moral turpitude, *viz.*, forgery and uttering.

Respondent, on the other hand, has not sought to controvert the facts alleged in support of the disciplinary charges. Quite to the contrary, he has candidly admitted his culpability from the moment of his apprehension; accordingly, the facts are not in dispute. What respondent

maintains is that this was an isolated episode in an otherwise unblemished military, civilian and professional career; that, as the panel below, in effect, said, his conduct was *de minimis* when one considers the amount of personal gain derived, $1.00; that one must assess respondent's conduct in light of the mores which prevail in the military "world"; and that, as the panel stated, "his remorse is most abject." Thus, he suggests, in urging disbarment the Bar Association is, in effect, engaging in a kind of "overkill"; and that even the reprimand recommended by the panel is too severe in light of the suffering already experienced by him. Because of the "private suffering and public humiliation" he has endured as a consequence of the publicity surrounding his case, respondent asks that the charges be dismissed.

In view of respondent's concession that he committed the act alleged, it matters little that the charges were not actually prosecuted to their conclusion, and that he has not been convicted of a crime. In other words, in terms of whether the charges of misconduct have been sustained, so as to subject him to a possible sanction, his admission in these proceedings just as effectively establishes such conduct as would a final judgment of conviction, in a criminal case, filed under Rule BV4 f 1. This is not to suggest, of course, that the decision to forego the prosecution, and the consequent absence of a conviction, are necessarily factors to be ignored in weighing the sanction to be imposed.

Therefore, it becomes unnecessary to decide whether, in the absence of a conviction, the conduct of respondent properly should be treated as that which involves moral turpitude. DR1-102 under Canon 1 of the American Bar Association Code of Professional Responsibility, adopted in this State by Rule 1230, provides in relevant part that:

"(A) A lawyer shall not:

\* \* \*

(3) engage in illegal conduct involving moral turpitude.

(4) engage in conduct involving dishonesty, *fraud, deceit,* or *misrepresentation.*

(5) engage in conduct that is prejudicial to the administration of justice.

* * * " (emphasis added).

That disciplinary proceedings will lie when an attorney is charged with, and sanctions imposed if there is a finding of, "professional misconduct, malpractice, fraud, deceit, crime involving moral turpitude, [and] conduct prejudicial to the administration of justice," is clear from a reading of Maryland Code (1957, 1968 Repl. Vol.), Art. 10, §§ 13 and 16. As we have noted, respondent has conceded that his conduct reflects overtones of deceit.

We turn, then, to the sanction to be imposed. Without undertaking an extensive review of the circumstances surrounding this episode, we conclude that, contrary to the position taken by the Bar Association, this is not an appropriate case for disbarment. There are a number of factors which, in our judgment, militate against the extreme sanction. Respondent's genuine contrition is among them. In this regard, the attitude of respondent stands in sharp contrast to that of the attorney in *Fellner v. Bar Ass'n*, 213 Md. 243, 247, 131 A. 2d 729 (1957), who, despite the ample evidence against him, never admitted his guilt, and denied it under oath in his answer to the petition filed in those proceedings. Other factors weighing against disbarment are respondent's otherwise unblemished record, *e.g.,* the isolated nature of this episode; the absence of aggravating circumstances; the negligible amount involved and the virtual absence of personal gain; the dismissal of the criminal charge; and finally, the obvious esteem with which respondent is viewed in his community.

Nor, however, is this properly a case for a bare reprimand, let alone an outright dismissal of these proceedings. Our earlier observations are largely dispositive here. However minimal the amount involved may have been, the inescapable fact remains that respondent's acts were the

fruits of misrepresentation; moreover, they were studied, not impulsive. It is questionable whether conduct such as occurred here can ever be so lightly regarded as to result in no more than a mere reprimand. Though not committed in a professional capacity, the actions of respondent nevertheless reflect directly upon his fitness as an attorney, *see In re Meyerson*, 190 Md. 671, 676, 59 A. 2d 489 (1948). A reprimand, as the least severe sanction which may be imposed in a disciplinary proceeding, is clearly reserved for misconduct that is not affected with such deception as was exhibited here.

In our considered judgment, the proper sanction to be applied here is a suspension of 90 days. Accordingly, James Franklin Vance will be suspended from the rolls of those authorized to practice law in Maryland for a period of 90 days commencing 30 days after the date on which this opinion is filed.

*It is so ordered.*