502 A.2d 502

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**David Nordeck SHAFFER.**

**Misc. Docket (Subtitle BV).**
**No. 12, Sept. Term, 1985.**

Court of Appeals of Maryland,

Jan. 9, 1986.

192

Melvin Hirshman, Bar Counsel, Annapolis, for Attorney Grievance Com'n of Maryland.

Deborah A. Lawson, Shepherdstown, W.Va., for respondent.

Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

In yet another case involving an attorney with problems with alcohol we shall do as we have done in some other cases, that is we shall indefinitely suspend with the right after thirty days to apply for reinstatement subject to certain conditions.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9, filed a petition with us seeking disciplinary action against David Nordeck Shaffer, a member of the Maryland Bar since November 16, 1978. He charged that

Shaffer violated Disciplinary Rules 1–102(A)(3), (4), (5), (6); DR 6–101(A)(1), (2), (3); and DR 2–110(B)(3). (The rules are set forth in the opinion of the trial judge which we shall quote.)

I

Pursuant to Rule BV9 b we referred the matter for hearing to a judge of the Fourth Judicial Circuit of Maryland. He filed with us an opinion which states:

"FINDINGS OF FACT

"Respondent, David Nordeck Shaffer, was admitted to the practice of law on November 16, 1978 and has practiced in Oakland, Garrett County, since that time. He is presently 31 years old.

"On May 20, 1985 the Attorney Grievance Commission of Maryland (Petitioner) filed a Petition for Disciplinary Action against Respondent. . . .

"Petitioner alleges that Respondent was charged on three (3) separate occasions, May 1, 1981; November 2, 1982; and November 6, 1983, of Driving While Intoxicated. To the first charge he entered a guilty plea to a violation of Sec. 21–902(b) and paid a fine. To each of the subsequent offenses he entered guilty pleas to a violation of Sec. 21–902(a) and was sentenced to incarceration, but those sentences were suspended and he was placed on probation.

"Petitioner also alleges that Respondent was charged on three occasions with violations of Article 27, § 141 (bad checks). The first charge in December, 1982 was disposed of by a *nolle prosequi*, restitution having been made. In June, 1983 Respondent pleaded guilty and was fined $50.00 and restitution and supervised probation were ordered. Subsequently that verdict was stricken and probation before judgment was entered. A second charge at that time was disposed of in like manner with a concurrent sentence. In August, 1983 two (2) charges were disposed of by a *nolle prosequi* because restitution had been made and Respondent was already on probation. An additional charge was

placed on the stet docket with three (3) conditions, among which were that the Respondent was to avoid further bad checks and submit to the care of Richard Vincent, Alcohol Counselor of the Maryland State Bar Association.

"Bar Counsel has also alleged that Respondent has neglected his practice, that charge flowing from his Court-ordered removal as Guardian of the property of Agnes Schlossnagle; that he undertook to handle a legal matter which he should have known that he was not competent to handle, namely a criminal defense in *State v. Miller;* and that he is not now competent, by reason of his mental or physical condition, to practice law.

"Petitioner suggests that Respondent's alleged misconduct has caused him to be in violation of the following Disciplinary Rules:

"DR 1–102 Misconduct.

(A) A lawyer shall not:

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

"DR 6–101 Failing to Act Competently.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.

"DR 2–110 Withdrawal from Employment

(B) Mandatory withdrawal
(3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.

"Or, in the alternative, that he is incompetent as defined by Maryland Rule BV(1)(h).

"No evidence has been adduced to indicate that the Respondent is presently incompetent as defined by Maryland Rule BV(1)(h) and the Court concludes that Petitioner has not carried its burden of proof on this charge.

"MOTOR VEHICLE OFFENSES

"The cornerstone of Canon 1 is EC 1–5 which provides that:

'A lawyer should maintain high standards of professional conduct and should encourage fellow lawyers to do likewise. He should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.'

"Respondent's convictions of three (3) alcohol-related motor vehicle offenses within two and one-half years is conduct which may tend to lessen public confidence in the legal profession, adversely reflects upon his fitness to practice and is prejudicial to the administration of justice. Therefore, such conduct is a violation of DR 1–102(A)(5) and (6).

"BAD CHECK OFFENSES

"Respondent was called upon to answer to charges under Art. 41, Sec. 141 (bad checks) on five (5) separate occasions. Two of the charges were concluded by a *nol pros* and one by the entry of a *stet*. Two of the charges produced guilty pleas, later stricken and amended to probation before judgment. Thus, Respondent does not now stand convicted of any of the bad check charges. However, having entered guilty pleas he is saddled with the presumption of knowl-

edge of the insufficiency of funds as established by Art. 27, Sec. 142(a). To that extent his actions must be said to constitute, at the least, misrepresentation and, is therefore, a violation DR 1–102(A)(4). Respondent has offered evidence in mitigation of those charges, including his special relationship with the drawee bank, the involvement only of his personal account and funds rather than professional accounts or clients' funds and that the overdrafts were the result of social, rather than professional, misconduct. This Court, in a disciplinary proceeding, cannot re-evaluate or re-weigh the evidence in the criminal case. *Attorney Grievance Commission v. Barnes,* 286 Md. 474 [408 A.2d 719] (1979).

"Petitioner also urges that the bad check charges amount to moral turpitude, citing *Attorney Grievance Commission v. Sperling,* 288 Md. 576 [419 A.2d 1067] (1980). In *Sperling,* the respondent was convicted under Art. 27, Sec. 142, the predecessor of the present "bad check" statute, of obtaining services by means of a bad check with intent to defraud. The current bad check statute has been somewhat softened and contains no reference to fraud or deceit. A bad check case involving deception must be prosecuted under the theft statute, not as a bad check case. Art. 27, Sec. 144. Specific criminal intent to defraud is not an element of the current bad check statute. The ruling of *Sperling* relates to a different, and harsher, statute and is not sufficient to support a finding that Respondent is guilty of moral turpitude. Moral turpitude is:

'... an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'

*Braverman v. Bar Assn. of Baltimore,* 209 Md. 328 [121 A.2d 473] (1956). Unless the intent to defraud is an element of the crime of which a respondent is convicted the offense does not *per se* involve moral turpitude. *Attorney Grievance Commission v. Walman,* 280 Md. 453 [374 A.2d 354] (1977). No attorney discipline cases charging misconduct

predicated upon the present Art. 27, Sec. 141 have been decided. Therefore, under the rationale of *Walman* and *Barnes* Respondent's violation of Art. 27, Sec. 141 constitutes neither fraud nor moral turpitude.

## "SCHLOSSNAGLE GUARDIANSHIP

"Respondent was appointed guardian of the property of Agnes E. Schlossnagle on June 6, 1983 and was discharged by Order of May 14, 1985 for having failed to perform the obligations of his office. The evidence clearly establishes that Respondent neglected the matter of the guardianship estate which had been entrusted to him by the Court and as a result violated DR 6–101(A)(3).

## "STATE V. MILLER

"Respondent defended John M. Miller, who was charged with rape and lesser included offenses, in January, 1979. The deficiencies of his representation of Miller were detailed in this Court's Opinion and Order granting Post Conviction relief on April 3, 1984. That Opinion is a part of the record in these proceedings. The Court remains satisfied that the inadequacy of Respondent's defense of Miller resulted solely from inexperience and not from any physical or mental incapacity. Nonetheless, Respondent's failures result in a violation of DR 6–101(A)(1) in that he should have known that he was not sufficiently competent to undertake a criminal defense of a crime of violence as his first Circuit Court case.

## "SUMMARY

"The Court finds, by clear and convincing evidence, that Respondent: (1) As a result of his DWI offenses has violated DR 1–102(A)(5) and (6); (2) As a result of his bad check offenses has violated DR 1–102(A)(4); (3) As a result of the *Schlossnagle* matter has violated DR 6–101(A)(3); (4) As a result of the Miller case has violated DR 6–101(A)(1); and (5) As a result of his physical and mental condition, and his failure to withdraw from matters he was handling while in an impaired condition, violated DR 2–110(B)(3).

"The Court further finds that there is no clear and convincing evidence of Respondent's present incompetence under Rule BV(1)(h).

## "MITIGATION

"The record establishes that during the period of time which found Respondent charged with driving while intoxicated and with the bad check charges he was using alcohol to excess and that his abuse was a causative factor in his behavior. In fact he was diagnosed at the Preston Memorial Hospital, Preston Alcoholic Treatment Service as being alcoholic and was treated for a period of 30 days. Having considered the medical records and having heard Respondent's own testimony the Court concludes that his alcoholism was a substantial causative factor in his inappropriate personal behavior leading to the DWI and bad check offenses and was likewise a substantial causative factor in his neglect of his professional obligations in the Schlossnagle matter. *Attorney Grievance Commission v. Truette*, 299 Md. 435 [474 A.2d 211] (1984); *Attorney Grievance Commission v. Willcher*, 287 Md. 74 [411 A.2d 83] (1980).

"Other relevant mitigating factors are the attorney's contrition, an otherwise unblemished record, the absence of any aggravating circumstances and the absence of personal gain. *Prince George's Co. Bar Ass'n. v. Vance*, 273 Md. 79 [327 A.2d 767] (1974). Respondent has expressed contrition and there has been no proof of personal gain or other aggravating circumstances. He has since limited his practice to matters he feels competent to handle.

## "RECOMMENDATIONS

"*Truette*, supra, provides the trial court with the opportunity of suggesting disposition, recognizing that the ultimate authority rests with the Court of Appeals. This Court believes that the ultimate sanction of disbarment is inappropriate under these facts. The purpose of disciplinary proceedings for professional misconduct is to protect the public from attorneys unfit to practice, not necessarily to punish

the offender. *Attorney Grievance Commission v. Stewart*, 285 Md. 251 [401 A.2d 1026] (1979).

"Respondent's serious alcohol abuse seems to have been abated and he has functioned appropriately since his discharge from the Preston program on March 1, 1984. However, the fact of his continued social drinking and his failure to accept the recommended after care is troubling to the Court, particularly in the face of the pending disciplinary proceedings. Therefore it is recommended that counseling regarding Respondent's personal problems and some limited supervision of his professional practice be attached as conditions to such sanctions as may be imposed."

## II

 Shaffer raises two exceptions to the trial judge's findings which we shall now address. Of course, the trial judge's findings are prima facie correct and will not be disturbed on appeal unless clearly erroneous. *Attorney Griev. Comm'n v. Miller*, 301 Md. 592, 602, 483 A.2d 1281, 1287 (1984).

### Exception 1.

Shaffer has excepted to the finding of a violation of DR 6–101(A)(1) (handling a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it). It is contended that to find him guilty of a violation of this rule "some form of culpable negligence—either wilfulness or grossness—should be required by this Court," citing *Attorney Griev. Comm'n v. Myers*, 302 Md. 571, 490 A.2d 231 (1985), and *Attorney Griev. Comm'n v. Bailey*, 286 Md. 630, 408 A.2d 1330 (1979).

In *Myers*, as Shaffer puts it, the attorney "failed to abide by statutory and common law requirements and prepared a will without proper signature and attestation clauses." We had before us no exception to the finding pertaining to DR

6–101(A)(1). We did have one pertaining to neglect, DR 6–101(A)(3), which we overruled.

In *Bailey* the trial judge found that he violated DR 6–101(A)(1) "based on his undertaking to provide title insurance when he could not do so." We had before us no exception to that finding.

We note specifically insofar as the Miller case is concerned that the trial judge has not found Shaffer guilty of handling a legal matter without preparation adequate in the circumstances (DR 6–101(A)(2)) or neglect of a legal matter entrusted to him (DR 6–101(A)(3)).

The entire record, including post conviction proceedings, in the Miller case is a part of the record in this case. In the post conviction proceeding the judge said:

"Counsel admittedly failed to call a witness suggested by Defendant; he failed to conduct a pre-trial factual investigation of the case, aside from reviewing the State's file; and he neglected to interview any of the State's prospective witnesses or any potential defense witnesses.

"At trial, counsel erred in two ways. He engaged in no cross-examination of the prosecutrix on the subject of whether or not, in the hours preceding the offense, she had been under the influence of, or using, either drugs or alcohol. Secondly, he failed to cross-examine the prosecutrix with regard to her conversation with Sandra M. Miller and also failed to cross-examine Sandra M. Miller with regard to that conversation. Additionally, he made no proffer of evidence which might have been admissible under the 'ulterior motive' exclusion of Article 27, § 461A.

"Having concluded that counsel erred, the Court must now determine the reason for counsel's actions. Counsel offered no explanation for his failure to adequately investigate the facts of the case prior to trial or to call witnesses suggested to him by Defendant. On the questions of potential ulterior motive and the prosecutrix's credibility or condition with regard to alcohol or drugs, he

states that he did not believe those matters to be relevant to his client's defense. These reasons cannot be considered to be legitimate trial tactics, but rather failures of counsel to appreciate the possible matters of defense available to his client. It should here be noted that at the time of Defendant's trial on January 11, 1980, counsel had been a member of the Bar for slightly more than one year and that his trial experience was at that time limited to a few appearances in the District Court for Garrett County. He had never tried a criminal case in the Circuit Court, either jury or non-jury. His lack of experience is, in this Court's opinion, a substantial contributing factor to his errors in the defense of Petitioner.

"... While counsel's omissions in any single instance, such as his failure to call a witness, or to adequately cross-examine, or to conduct a pre-trial factual investigation, might not justify Petitioner to relief, taken as a whole and viewed in the context of his total representation of Petitioner, they do amount to his failure to provide Petitioner with the effective assistance of counsel."

The trial judge in this matter was the same one who sat in the post conviction proceeding pertaining to Miller. In this case he commented at the time of the hearing:

"But my own view . . . of the Miller case is that whatever came down as a result of the Miller case, the only fault that can be laid at Mr. Shaffer's feet is crass inexperience at the time he took the case. I have never in my own mind, and don't believe that I have yet been able to translate that into any professional misconduct other than poor judgment. And that's I think my opinion in the post-conviction case indicated as much, and I have reviewed the record again, and purely and simply I think he was in a case over his head. And I think . . . that's the extent of his error in the Miller case."

We sustain this exception. Our reading of the trial judge's opinion does not convince us that it was manifest in the beginning that more experienced counsel was needed to assist Shaffer in his defense of Miller. We do not go so far,

however, as to adopt Shaffer's suggestion that "some form of culpable negligence—either wilfulness or grossness—should be required by this Court" in order to find a violation of DR 6–101(A)(1).

*Exception 2.*

Shaffer has excepted to the finding of a violation of DR 1–102(A)(4) (misrepresentation) pertaining to the bad check charges "in that no actual intent to misrepresent has been proven." Shaffer cites in support of his position *Myers*, 302 Md. 571, 490 A.2d 231; *Attorney Griev. Comm'n v. Sherman*, 295 Md. 229, 454 A.2d 359 (1983), and *Attorney Griev. Comm'n v. O'Neill*, 285 Md. 52, 400 A.2d 415 (1979), stating that in all cases known to him "in which attorneys were sanctioned for misrepresentations [there was] involved some affirmative act by the attorney in furtherance of the deceit . . . ." He asserts, correctly, that *Myers* "involved an attorney's deliberate attempt to conceal his misdeeds from an inquiry panel." He says that in *Sherman* "there was a deliberate concealment of inaction on a client's case from the presiding judge." In *O'Neill* he states that "there was a deliberate misrepresentation regarding payment of court costs on an attorney's conviction for driving while intoxicated."

Shaffer was charged with violation of Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 141 pertaining to obtaining property or services by a bad check. The section states:

"A person is guilty of obtaining property or services by a bad check when:

"(a)(1) As a drawer or representative drawer, he obtains property or services by uttering a check knowing that he or his principal, as the case may be, has insufficient funds with the drawee to cover it and other outstanding checks; and

"(2) He intends or believes at the time of utterance that payment will be refused by the drawee upon presentation; and

"(3) Payment is refused by the drawee upon presentation.

"(b)(1) He obtains property or services by passing a check knowing that the drawer thereof has insufficient funds with the drawee to cover it and other outstanding checks; and

"(2) He intends or believes at the time the check is passed that payment will be refused by the drawee upon presentation; and

"(3) Payment is refused by the drawee upon presentation.

"(c) As a drawer or representative drawer, he obtains property or services by uttering a check knowing that he or his principal, as the case may be, at the time of uttering the check intends, without the consent of the payee, to stop or countermand the payment of the check, or otherwise to cause the drawee to disregard or dishonor or refuse to recognize the check, and payment is refused by the drawee upon presentation.

"(d) He obtains property or services by passing a check knowing that payment of the check has been stopped or countermanded, or the drawee of the check will disregard or dishonor or refuse to recognize the check, and payment is refused by the drawee upon presentation."

It will be noted that knowledge of the circumstances is required for each of the four provisions for conviction under that section. In at least two of the bad check cases there was a guilty plea, a judicial admission as to the truthfulness of that alleged. The trial judge correctly commented that he, "in a disciplinary proceeding, cannot re-evaluate or re-weigh the evidence in the criminal case," citing *Attorney Griev. Comm'n v. Barnes,* 286 Md. 474, 408 A.2d 719 (1979). In order to sanction an attorney for misconduct it is not necessary that the acts for which sanction is imposed have arisen in the practice of law. *See Attorney Griev.*

*Comm'n v. Mandel,* 294 Md. 560, 451 A.2d 910 (1982), and *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974). Accordingly, we find no merit to this exception.

### IV

We note that the trial judge found by clear and convincing evidence "that during the period of time which found Respondent charged with driving while intoxicated and with the bad check charges he was using alcohol to excess and that his abuse was a causative factor in his behavior."

As Chief Judge Murphy recently said for the Court in *Attorney Griev. Comm'n v. Truette,* 299 Md. 435, 446, 474 A.2d 211, 217 (1984), citing *Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 431 A.2d 1336 (1981), "the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney." We perceive the problems that have arisen here as stemming from two things, difficulties with alcohol and a certain lack of competence.

We observed in *Attorney Griev. Comm'n v. Finlayson,* 293 Md. 156, 159, 442 A.2d 565, 567 (1982): "The disease of alcoholism is such that those who say and believe that they are cured do not always remain so. The Director of the Maryland State Bar Association program testified that total abstinence is the only effective treatment for alcoholism." We are perturbed, as was the trial judge, by the fact that this attorney with an admitted problem which directly contributed to the difficulties in which he finds himself is continuing to drink alcoholic beverages and has failed to accept the after care program recommended to him after his discharge from the hospital.

■ We think, considering all of the circumstances, that the proper sanction is that Shaffer be forthwith suspended indefinitely from the practice of law in this State. We wish, however, to leave the door open to his rehabilitation as a useful and reputable member of the legal profession of this State. Accordingly, this suspension is without prejudice to Shaffer's right to petition us for reinstatement any time

after thirty days from the date of this suspension. In making such application he must understand that he will be reinstated only if he meets the following conditions:

1—He shall abstain from consumption of alcoholic beverages.

2—He shall participate in such rehabilitative activities as may be prescribed from time to time by Bar Counsel and by the Director of the Lawyers' Counseling Program of the Maryland State Bar Association.

3—He shall in cooperation with Bar Counsel work out a program with Bar Counsel for having his practice monitored with submission of such periodic reports to Bar Counsel as Bar Counsel may require.

4—He shall pay all costs incurred in connection with this proceeding.

Shaffer must understand that a breach of any one of the above conditions will be grounds for renewal of his indefinite suspension. It goes without saying that the matter of these conditions is subject to the further order of court.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DAVID NORDECK SHAFFER.