506 A.2d 245
**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**David Grant WILLEMAIN.**

**Misc. Docket (Subtitle BV) No. 11, Sept. Term, 1985.**

Court of Appeals of Maryland.

March 27, 1986.
Motion for Reconsideration Denied May 1, 1986.

**666**

Melvin Hirshman, Bar Counsel and Walter D. Murphy Jr., Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland, for petitioner.

Andrew Jay Graham, Baltimore, for respondent.

Argued before SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), Specially Assigned.

SMITH, Judge.

This is the second trip to this Court of this attorney where alcohol is said to be responsible for his violation of the Disciplinary Rules. *See Attorney Griev. Comm'n v. Willemain,* 297 Md. 386, 466 A.2d 1271 (1983), for the earlier occasion. We shall indefinitely suspend with the right to apply for readmission after two years subject to certain conditions.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9, filed a petition with us on behalf of the Attorney Grievance Commission seeking disciplinary action against David Grant Willemain, a member of the Maryland

Bar since June 20, 1974. The petition alleged violation of Disciplinary Rules 1–102(A)(1), (3), (4), (5), and (6); 2–110(B)(3); 6–101(A)(1), and (2); 7–101(A)(1), (2), and (3); 7–102(A)(3), (5), and (8); and 9–102(A)(1), and (2), (B)(1), (2), (3), and (4).[1] Bar Counsel also charged a violation of

---

1. These rules state in relevant part:
   "DR 1–102 Misconduct.
   "(A) A lawyer shall not:
       (1) Violate a Disciplinary Rule.
       (2) . . .
       (3) Engage in illegal conduct involving moral turpitude.
       (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
       (5) Engage in conduct that is prejudicial to the administration of justice.
       (6) Engage in any other conduct that adversely reflects on his fitness to practice law.
   "DR 2–110 Withdrawal from Employment.
   "(A) . . .
   "(B) Mandatory withdrawal.
       A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
       (1) . . .
       (2) . . .
       (3) His mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively.
   "DR 6–101 Failing to Act Competently.
   "(A) A lawyer shall not:
       (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
       (2) Handle a legal matter without preparation adequate in the circumstances.
   "DR 7–101 Representing a Client Zealously.
   "(A) A lawyer shall not intentionally:
       (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
       (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may with-

Maryland Code (1957, 1981 Repl. Vol., 1982 Cum. Supp.)
Art. 10, § 44.[2]

---

draw as permitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

"DR 7–102   Representing a Client Within the Bounds of the Law.

"(A) In his representation of a client, a lawyer shall not:

    (1) ...

    (2) ...

    (3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

    (4) ...

    (5) Knowingly make a false statement of law or fact.

    (6) ...

    (7) ...

    (8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

"DR 9–102   Preserving Identity of Funds and Property of a Client.

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

    (1) Funds reasonably sufficient to pay bank charges may be deposited therein.

    (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

    (1) Promptly notify a client of the receipt of his funds, securities, or other properties.

    (2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

    (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

    (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

2.   This statute provides in relevant part:

## I

Pursuant to Rule BV9 b we referred the matter for hearing to a judge of the Third Judicial Circuit of Maryland. He has filed a comprehensive report with us in which he states:

"Based upon the testimony and exhibits adduced at the hearing, this Court is persuaded by clear and convincing evidence that the following facts are true.

"During July, 1980, Willemain began representing Ales M. Culotta concerning the domestic problems with her husband, Anthony C. Culotta. As of 1982, Mr. and Mrs. Culotta, who were then still married but separated, owned a home as tenants by the entireties known as 8201 Bellona Avenue, Towson, Maryland, subject to a first mortgage held by Bradford Federal Savings and Loan Association and a second mortgage held by Control Data Business Systems. Mr. and Mrs. Culotta were behind in their mortgage payments to Bradford Federal and by June, 1982, foreclosure on the property by Bradford Federal was imminent.

---

"(a)(1) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of court order to the contrary shall be expeditiously deposited in an account or accounts maintained as a separate account or accounts for funds belonging to others. In no event shall the attorney commingle any such funds with such attorney's funds or use any such funds for any purpose other than the purpose for which they were entrusted to the attorney.

\*       \*       \*       \*       \*       \*

"(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or conduct prejudicial to the administration of justice and shall be proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

"(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) hereof shall be guilty of a misdemeanor for each such violation and on conviction thereof, shall be fined not more than five thousand dollars ($5,000.) or be imprisoned for not more than five (5) years, or both in the discretion of the court."

"On or about July 8, 1982, Willemain prepared a contract of sale for the home which was executed at that time between Mr. and Mrs. Culotta as sellers and Scott Haupt, Robert Pollock and Michelle Pollock, his wife, as purchasers. The execution of this contract averted the foreclosure. The contract price was $92,000.00.

"Pursuant to the terms of the contract, the purchasers paid two deposits to Willemain as escrow agent, both of which were credited against the purchase price. The first deposit, in the amount of $3,350.30, was paid to Willemain at the time of the execution of the contract. The second deposit, in the amount of $4,600.00, was paid to him on July 30, 1982.

"Under the terms of the contract, Willemain, as escrow agent, was required to place these two deposits into an escrow account and from the second deposit ($4,600.00) pay the monthly payments on the first mortgage ($506.82) and second mortgage ($385.19) until settlement, which ultimately occurred on December 31, 1982 at Sentinel Title Corporation. Taking into account the two deposits mentioned above, the settlement officer issued a check for the net proceeds of sale to Mr. and Mrs. Culotta in the amount of $19,365.99, which was deposited in Willemain's escrow account on January 3, 1983. On June 2, 1983, Willemain drew a check to the order of Mr. Culotta and Robert B. Greenwalt, Esquire (Mr. Culotta's attorney) in the amount of $10,198.98 for Mr. Culotta's share of the net proceeds. The balance in the escrow account, however, was under $6,000.00 between June 1, 1983 and June 10, 1983 when a deposit of $5,500.00 raised the balance to $10,598.13. Willemain's check to Culotta and Greenwalt cleared on June 13, 1983.

"All of the above facts were presented to this Court through PX1 and are uncontraverted. Willemain concedes that he made only four payments each to Bradford Federal and Control Data out of the $4,600.00 fund which he held and made no payments after September 29, 1982 (PX2E). Had Willemain made the mortgage payments as

he was required to do under the terms of the Culotta/Pollock Agreement (PX2A) he should have had a remaining balance in his escrow account of $1,031.96 ($4,600.00 less $385.19 + $506.82 × 4). His bank records, however, show clearly that on November 29, 1982, approximately one month before settlement, his escrow account showed a balance of $27.69.

"Willemain further concedes that when he was called upon to disburse the $19,365.99 fund which he held in escrow following the December 31, 1982 settlement of the sale of the Culotta's property, he did not have sufficient funds in his escrow account to cover a check written to Anthony Culotta on June 2, 1983 in the amount of $10,-198.98 (PX3—Tr. 36). Between the issuance of that check and its presentation for payment, Willemain made a deposit of $5,500.00 of his own funds on June 10, 1983 (PX5) to cover the Culotta payment.

"All of the above facts were presented to this Court by the Commission by way of exhibits and without testimony and the Commission rested its case.

"Willemain's defense to the Commission's charges consisted primarily of a re-presentation of his continuing struggle with alcoholism and substance abuse, factually consistent with that considered in *Attorney Grievance Commission v. Willemain* [297 Md. 386, 466 A.2d 1271], Misc. Docket No. 29, September Term 1982, filed October 25, 1983, reported 297 Md. 386. (The opinion in that case was offered and received as Defendant's Exhibit # 3 in this proceeding.) Willemain presented evidence of compliance with the Court of Appeals condition number 3 for reinstatement, namely:

'He shall be associated with another member of the Bar of this Court who shall monitor his activities as a practicing lawyer and report promptly to Bar Counsel should Willemain fail to act promptly on behalf of his clients. That attorney's consent and an indication of his willingness to so act shall be appended to any petition for reinstatement.'

"Unfortunately for Willemain, his associate and monitor has had little experience as a member of the Bar, having been admitted in 1981, has served as monitor only since January, 1985 and has reported to Bar Counsel on two occasions (April 26, 1985 and August 15, 1985):

'I confess that I am somewhat uncomfortable in this role. It is my desire to satisfy you and the Court in every respect. I am uncertain as to precisely what is expected of me and would appreciate your advices as to how to carry through with my responsibility.'

and

'I must call to your attention that I am incompetent to review Mr. Willemain's bankruptcy and tax files. I have no training, education or experience in these areas. I must also tell you that my work and expertise in real estate is limited.'

"Further, the monitor testified to an inability to balance checkbooks, but that Willemain's escrow account 'looks right'.

"In any event, the monitor could have been of no help to Willemain in this case, having been only recently designated as monitor, long after the events which led to the charges under consideration here. The remainder of Willemain's defense consisted of the testimony of the Director of the MSBA Lawyer Counseling Service, physicians, the Respondent's wife and the Respondent himself, who have persuaded this Court by clear and convincing evidence that the Respondent is a recovering alcoholic and substance abuser who has made major adjustments in his life style since 1982 and significant strides toward reorganizing his law practice. Moreover, the events which led to the instant charges occurred prior to the institution of the charges which resulted in the Disciplinary Orders imposed by the Court of Appeals in *Attorney Grievance Commission v. Willemain,* supra in October, 1983. This Court finds as a fact that the events involving the Culottas are nothing more than another chapter in the

continuing saga of a lawyer's misconduct which was, in the words of the Court of Appeals, 'triggered by his bout with the bottle' (*Willemain,* supra). While there was some evidence that Willemain also suffers from a personality disorder, this Court is unable to find a causal connection between that diagnosis and Willemain's professional misconduct.

## "CONCLUSIONS OF LAW

"Based upon the aforegoing findings of fact this Court concludes, as a matter of law, Willemain did violate:

"1. Disciplinary Rule 1–102(A)(1), (4) and (6) in that he used funds of a client held in escrow for purposes other than those for which he held such funds and knowingly wrote checks on that escrow account which exceeded the available balance of the escrow account.

"2. DR 2–110(B)(3) in that his alcoholism and substance abuse rendered it unreasonably difficult for him to effectively carry out his employment by Mrs. Culotta to handle the escrow funds entrusted to him.

"3. DR 7–102(A)(3), (5) and (8) in that he knowingly concealed the use of escrow funds for purposes other than those for which the funds were entrusted to him, knowingly made a false statement of fact by issuing a check to Mr. Culotta on an account, which check exceeded the balance of such account, and knowingly engaged in illegal conduct by using a client's funds held in escrow.

"4. DR 9–102(B)(3) and (4) in that he failed to maintain complete records of all funds of a client coming into his possession and promptly pay or deliver to the client the funds in his possession or pay the funds to others who were entitled to receive them."

## II

Bar Counsel has excepted to certain of the trial judge's findings of fact.

### a

He first excepts to the finding to the effect that the events which led to the instant charges occurred prior to the institution of the charges which were before the Court in the prior proceeding to which we have referred. The prior case was instituted by the filing of a petition for disciplinary action with us on January 3, 1983. The report of the trial judge was dated May 12, 1983. It will be recalled that the trial judge in his report in this case referred to the settlement from which the bulk of the funds were misappropriated as having taken place on December 31, 1982. We sustain this exception.

### b

■ Bar Counsel excepts to the failure of the trial judge to conclude that Willemain violated Art. 10, § 44, "particularly in view of his conclusions numbered 1 and 3 ...." It is obvious that when the escrow funds were not in the trust account of Willemain there was a violation of this statute. Hence, we sustain this exception.

### c

■ Bar Counsel excepts to the failure of the trial judge to conclude that Willemain violated DR 1–102(A)(3) "in view of his conclusions numbered 1 and 3." This rule pertains to engaging in illegal conduct involving moral turpitude. Misappropriation of the funds of others by an attorney is such conduct. Therefore, we sustain this exception.

### III

Willemain has filed a number of exceptions.

### a

He first excepts to the finding that his monitor has reported on only two occasions, saying that in fact three reports were made although the letter constituting a third report was not offered in evidence. Bar Counsel concurs. Therefore, that exception is sustained.

b

■ Willemain excepts to the conclusion that he violated any of the canons cited "to the extent that they require intent and volition." In his testimony Willemain characterized his use of the escrow funds as a borrowing of funds. Borrowing obviously is a volitional act. In *Attorney Griev. Comm'n v. Pattison*, 292 Md. 599, 441 A.2d 328 (1982), we spoke of the temptation of attorneys to "borrow" the funds of clients:

> "So often attorneys for one reason or another find themselves in a position where the flow of cash in their practice is insufficient to meet office overhead, family needs, and the like. Then comes the temptation to dip into funds which have been entrusted to the attorney, with the thought that the money soon can and will be paid back and the hope that no one will be the wiser. Often, as here, the peculations grow and grow. It is fundamental that a fiduciary may not make a loan, secured or unsecured (as was this), unto himself." 292 Md. at 607–08, 441 A.2d at 332.

The record in this case supports the trial judge's finding of knowing violations of the Disciplinary Rules. Accordingly, this exception is overruled.

c

■ Willemain excepts to the conclusion that he violated DR 1-102(A)(4) pertaining to engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation "because he did not intend to defraud or deceive." For the reasons stated in b above this exception is overruled.

d

■ Willemain excepts to the conclusion that he violated DR 2-110(B)(3) pertaining to withdrawal from employment where one's mental or physical condition renders it unreasonably difficult for him to carry out the employment effectively. He says, "[T]here was no evidence that he failed to carry out his employment effectively or to repre-

sent his client, Mrs. Culotta, properly.  Moreover, there was no evidence concerning any alleged mishandling of her portion of the escrow funds."  Without going into an analysis pertaining to the situation in June of 1983 we point out that the trial judge found that on November 29, 1982, approximately one month before the settlement on the Culotta property, "his escrow account showed a balance of $27.69" when "he should have had a remaining balance in his escrow account of $1,031.96" had he made the required mortgage payments.  A part of those funds belonged to Mrs. Culotta.  We overrule this exception.

e

■ Willemain excepts to the conclusion that he violated DR 7–102(A)(3) pertaining to concealing or knowingly failing to disclose that which he is required by law to reveal, saying "he did not conceal or fail to disclose something required by law to be revealed."  Bar Counsel states "that the unauthorized borrowing of funds of others from the escrow account and unauthorized use thereof would certainly be a violation of DR 7–102(A)(3) as it is illegal to use the funds of others without their permission."  This conduct involves essentially the same conduct discussed in III b and c.  Hence, we shall overrule this exception.

f

■ Willemain excepts to the conclusion that he violated DR 9–102(B)(3) pertaining to maintaining a complete record of all funds, securities, and other properties of a client coming into the possession of the lawyer and rendering appropriate accounts to his client regarding them.  He says, "[T]here was no evidence that complete records were not kept respecting his escrow account, and, indeed, to the contrary, Ms. Linda Proper, a bookkeeper, testified that appropriate records were maintained."  Bar Counsel responds that the deposition of Ms. Proper was not offered into the record.  Given the fact that the balance in his escrow account as of November 29, 1982, as to the Culottas

should have been $1,031.96 but the total amount in that fund was only $27.69, we agree that the trial judge was justified in finding a violation of DR 9–102(B)(3).

g

■ Willemain excepts to the conclusion that he violated DR 9–102(B)(4) relative to promptly paying or delivering to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive. He says, "[T]he undisputed evidence concerning the portion of the funds in the escrow account originally belonging to Mr. Willemain's client, Mrs. Culotta, was that she had agreed to release those to Mr. Willemain to compensate him in part for fees which she owed to him for legal services rendered." Bar Counsel "concede[s] this exception because there is no evidence that Mrs. Culotta requested funds in the possession of Mr. Willemain as contemplated by that rule."

IV

■ In *Bar Ass'n v. Marshall*, 269 Md. 510, 307 A.2d 677 (1973), Judge Digges said for the Court:

"[I]t is essential that all members of the legal fraternity be strongly and constantly impressed with the truism that in handling moneys and properties belonging to their clients or others that they accept them in trust and are strictly accountable for their conduct in administering that trust, so they dare not appropriate those funds and properties for their personal use. The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct. *Balliet v. Balto. Co. Bar Ass'n*, 259 Md. 474, 479, 270 A.2d 465 (1970); *In the Matter of Lombard*, 242 Md. 202, 218 A.2d 208 (1966); *In Re Williams*, 180 Md. 689, 23 A.2d 7 (1941).... We, therefore, conclude that when a member of the bar of this Court is found to have betrayed the high trust imposed in him by appropriating to

his own use funds of others entrusted to him, as Marshall did, then, absent the most compelling extenuating circumstances, which we do not find to be present here, disbarment should follow as a matter of course." 269 Md. at 519–20, 307 A.2d at 682.

We have repeated this assertion in a host of cases since 1973. *See, e.g., Attorney Griev. Comm'n v. Moore,* 301 Md. 169, 171, 482 A.2d 497, 498 (1984); *Attorney Griev. Comm'n v. Mason,* 295 Md. 49, 52–53, 453 A.2d 143, 144–45 (1982); *Attorney Griev. Comm'n v. Micka,* 289 Md. 131, 133, 422 A.2d 383, 384 (1980); *Attorney Griev. Comm'n v. Andresen,* 281 Md. 152, 160–61, 379 A.2d 159, 163–64 (1977).

Where alcohol has been shown to be a substantial factor in bringing about misconduct of an attorney our practice has been to indefinitely suspend rather than to disbar. *See, e.g., Attorney Griev. Comm'n v. Shaffer,* 305 Md. 190, 204, 502 A.2d 502, 509 (1986); *Attorney Griev. Comm'n v. Miller,* 301 Md. 592, 608–09, 483 A.2d 1281, 1290 (1984); *Attorney Griev. Comm'n v. Truette,* 299 Md. 435, 446, 474 A.2d 211, 217 (1984); *Attorney Griev. Comm'n v. Dunphy,* 297 Md. 377, 385, 467 A.2d 177, 181 (1983); *Attorney Griev. Comm'n v. Finlayson,* 293 Md. 156, 160, 442 A.2d 565, 567 (1982); *Attorney Griev. Comm'n v. Flynn,* 283 Md. 41, 46, 387 A.2d 775, 778 (1978).

In Willemain's earlier trip here we observed, "As we recognized in *Finlayson,* 293 Md. at 159, [442 A.2d at 567,] the disease of alcoholism is such that those who say and believe that they are cured do not always remain so." 297 Md. at 396, 466 A.2d at 1275. In that earlier case we quoted the report of the trial judge submitted to us under date of May 12, 1983, in which he said:

"The evidence appears to the Court that the Respondent is now in control of his medical and emotional problems as well as control over the proper management of his law office." 297 Md. at 393, 466 A.2d at 1274.

We find this disturbing because the peculations which are the subject of this proceeding were going on at that very

time and also because in this proceeding one of the psychiatrists produced on behalf of Willemain testified that Willemain was unstable into the summer of 1983. We believed from the record at the time of the filing of that earlier opinion on October 25, 1983, that Willemain had overcome his difficulties. It was for that reason that we were willing to indefinitely suspend him with the right to immediately apply to us for reinstatement, which reinstatement was to be subject to certain conditions. We have an obligation to protect the people of Maryland. We have said many times that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. *See, e.g., Shaffer*, 305 Md. at 204, 502 A.2d at 509; *Truette*, 299 Md. at 446, 474 A.2d at 217; *Attorney Griev. Comm'n v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981).

But for the fact that alcohol has been found to be at the root of Willemain's problems and thus that he was not his own master, we would disbar without hesitation. Given his prior record and the facts adduced in this proceeding, we believe that he must again be indefinitely suspended from the practice of law effective thirty days from the filing of this opinion. In this instance it will be without prejudice to his right to apply for reinstatement after two years from the date of his suspension. Reinstatement, if any, at that time will be subject to the conditions imposed previously as well as certain additional conditions. The conditions are:

1—He shall participate in such activities as may be prescribed from time to time by the Director of the Lawyers' Counseling Program of the Maryland State Bar Association.

2—He shall maintain active membership in and participation with Alcoholics Anonymous.

3—He shall be associated with another member of the Bar of this Court who shall monitor his activities as a practicing lawyer and report promptly to Bar Counsel should Willemain fail to act promptly on behalf of his clients. This must be an actual association or a

sharing of office space.[3]   Such associate must meet with the approval of Bar Counsel.   That attorney's consent and an indication of his willingness to so act shall be appended to any petition for reinstatement. The associate shall submit such periodic reports to Bar Counsel as he may require.

4—He shall pay all costs incurred in connection with this proceeding on such schedule as Bar Counsel may specify taking into consideration Willemain's income and his obligations and responsibilities to his wife and children.   If there are any costs incurred in the previous proceeding which have not been paid, they too shall be paid subject to such condition.

Any application for reinstatement shall be referred to a trial judge for the taking of testimony pursuant to Rules BV9 and BV10 on the issue of Willemain's then competency and there shall be an affirmative finding that his medical and emotional problems are in such control that he may properly manage a law office.

Willemain must understand that a breach of any one of the above conditions will be grounds for renewal of his indefinite suspension.   It goes without saying that if Willemain is reinstated and if he at any time disagrees with monetary requirements imposed by Bar Counsel, he may file exceptions with us.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT

---

**3.** We said in the earlier case, "There was an indication that Willemain would prefer to practice with another or others.   Moreover, practicing with another would provide a monitor upon Willemain's activities." 297 Md. at 396, 466 A.2d at 1276.   We intended the earlier condition to be one of actual association, not what appears to have developed of an attorney who sort of looked into Willemain's office from time to time.   We intend this condition to be one of actual association in the practice of law as partner or as associate or a sharing of office space.

**682**

TO MARYLAND RULE BV15 c FOR WHICH SUM JUDG-
MENT IS ENTERED IN FAVOR OF THE ATTORNEY
GRIEVANCE COMMISSION AGAINST DAVID GRANT
WILLEMAIN.