503 A.2d 714

# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Herbert Louis SINGLETON, Jr.

**Misc. Docket (Subtitle BV) No. 1, Sept. Term, 1985.**

Court of Appeals of Maryland.

Jan. 30, 1986.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel for the Atty. Grievance Com'n, for petitioner.

William Murphy, Jr., and Edward Smith, Jr., Baltimore, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

Acting on direction of the Review Board pursuant to Maryland Rule BV7, the Attorney Grievance Commission (Commission), through Bar Counsel, filed charges against the Respondent, Herbert Louis Singleton, Jr., a member of the Maryland Bar since 1974.

The charges involved the complaints of the following clients:

1. Elva C. Ford
2. Baye B. Mwangi
3. Elmer Smallwood
4. Dred Speight

Details of the various charges relevant to specific clients will be set forth as we discuss the exceptions to the trial judge's findings of fact and conclusions of law taken by the Commission.

Pursuant to Rule BV9 b, we transmitted the charges to Judge Thomas Ward, Circuit Court for Baltimore City, for hearing. A hearing was held following which Judge Ward filed his Memorandum and Order by which he concluded as follows:

1. That the Petitioner failed to produce clear and convincing evidence to sustain the charges brought against Respondent in the Ford matter;

2. The Petitioner sustained the charge of neglect, DR6–101(A) (3), as to the Mwangi complaint, but not as to DR1–102(A)(4), misrepresentation;

3. The Petitioner failed to sustain the charges involved in the Smallwood complaint;

4. Petitioner sustained the charge of failing to act competently, DR6–101(A)(3), so far as neglect of a legal matter entrusted to him is concerned. Other charges involved in the Speight complaint were not sustained by Petitioner.

The Commission has excepted to the trial judge's findings in the Ford and Mwangi matters only; no exceptions have been taken by Respondent.

(A)

In the Ford matter the Commission charged Respondent with violation of DR1–102(A)(1)(4)(5)(6);[1] DR6–101(A)(3);

---

1. Disciplinary Rule 1–102
   "Misconduct.
   (A) A lawyer shall not:
   (1) Violate a Disciplinary Rule.
   　　　*　　　*　　　*
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
   (5) Engage in conduct that is prejudicial to the administration of justice.
   (6) Engage in any other conduct that adversely reflects on his fitness to practice law."
   Disciplinary Rule 6–101
   "Failing to Act Competently.
   (A) A lawyer shall not:
   (3) Neglect a legal matter entrust to him."
   Disciplinary Rule 7–101
   "Representing a Client Zealously.
   (A) A lawyer shall not intentionally:
   (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR7–101(A). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

and DR7–101(A)(1)(2)(3). The trial judge found as facts the following:

"Elva C. Ford retained the Respondent through the Maryland Volunteer Lawyer Service in or about September of 1982 to handle her divorce case. She and her husband had separated on January 15, 1980, and Mrs. Ford testified that the separation had been continuous since that time.

"Mrs. Ford testified that she first saw Mr. Singleton in August of 1980, after she received a letter from Legal Aid. She testified that she did not go back after that.

"In September of 1982 the Maryland Volunteer Lawyer Service recommended Mrs. Ford to Mr. Singleton to handle her divorce case. The record is not clear as to how Maryland Volunteer Lawyer Service came to make the recommendation, but apparently Mrs. Ford again consulted them after having taken no further action following her contact with Mr. Singleton in 1980.

"In any event, the train of events leading to the present action apparently began as a result of the Maryland Volunteer Lawyer's recommendation to her referring her to Mr. Singleton. She testified she saw him in approximately October of 1982, and it is apparently agreed by both the testimony of Mr. Singleton and Mrs. Ford that Mr. Singleton stated that she would be eligible to have a divorce action filed on grounds of a three year separation period in 1983. Both Mrs. Ford and Mr. Singleton further agree that Mrs. Ford did not know her husband's whereabouts at the time of the October, 1982, interview, and Mr. Singleton stated that when she had further information, she should get back to him.

---

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR2–110, DR5–102, and DR5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR7–102(B)."

"Again, both testified that in 1983 Mrs. Ford did contact Mr. Singleton informing him that she had information that her husband was now in the Baltimore City Jail, because she had been there to see him the day before. Mrs. Ford testified Mr. Singleton said he would send someone there to serve the papers. It is at this point that apparently Mrs. Ford's complaint arises, stating that she was unable to contact him for a long period of time after this, and that Mr. Singleton did not file a Bill of Complaint on behalf of Mrs. Ford until on or about May 14, 1984.

"However, when Mrs. Ford was pressed to state exactly how many times she had seen Mr. Singleton, she testified she saw Mr. Singleton at the time of her initial visit in 1982. In addition to that she stated she saw him after she filed a complaint with the Attorney Grievance Commission of Maryland. Apparently the divorce was finally perfected by George Tindal, Esquire, and Mrs. Ford testified she assumed that Mr. Tindal performed the service on behalf of Mr. Singleton.

"Mr. Singleton testified that he did not regard himself as representing Mrs. Ford as a result of the initial interview in 1980. Mr. Singleton regarded his representation of Mrs. Ford as commencing with a letter which he received from the Maryland Volunteer Lawyers Service, resulting in an appointment with Mrs. Ford, at which time she retained him for the purpose of obtaining a divorce.

"It seems clear that Mr. Singleton, as a result of his inability to obtain a definite address of Mrs. Ford's husband, regarded the case as stalled until he obtained further information. This information was first given him in 1983 when Mrs. Ford informed him that her husband was in the Baltimore City Jail. Mr. Singleton stated that Mrs. Ford did not contact him after the initial interview in 1982 until she called in 1983.

"The bottom line in the case at hand seems clear from Mrs. Ford's testimony that there was little contact between her and Mr. Singleton from the time of her first

contact in 1980, her second contact in 1982, her third contact in 1983, and a possible fourth contact with Mr. Tindal and/or Mr. Singleton in 1984—after she filed her complaint. Apparently, the case is based upon her irritation and anger over the failure of Mr. Singleton to successfully serve and sue her husband for divorce, despite her own failure to take action in her own case to provide him the information he requested."

Thereafter the trial judge found:

"This Court finds that there is virtually no contest that Mr. Singleton did not represent Mrs. Ford as a result of the initial interview in 1980, but was merely asked advice. The Court finds that the representation of Mr. Singleton of Mrs. Ford began as a result of her interview with him in 1982, at which time, it seems agreed by both parties, that Mrs. Ford would produce additional information concerning the whereabouts of her husband in order that he may be served in a prospective divorce action.

"Although the testimony is less than crystal clear, it seems apparent from the testimony of Mrs. Ford that there was no more than three contacts between her and Mr. Singleton over the entire period of her representation. The first being the initial interview in 1982, the second being when she provided him with information that her husband was located in the Baltimore City Jail, and the third contact being when she eventually received the divorce through an associate of Mr. Singleton in 1984.

"While the testimony reveals that Mr. Singleton probably truthfully testified that he does not 'tickle the file' meaning that he did not make any attempt to contact Mrs. Ford during this period of time, it is also very clear that Mrs. Ford made little attempt to spur on Mr. Singleton with respect to her divorce action.

"The Court finds that the Petitioner has failed to produce clear and convincing evidence to sustain the charges brought by the Attorney Grievance Commission."

The Commission argues that the trial judge erred in not finding Respondent in violation of DR6–101(A)(3) for neglecting Mrs. Ford's case. We have reviewed the record and cannot say that Judge Ward's conclusion was clearly erroneous. *Attorney Griev. Comm'n v. Myers,* 302 Md. 571, 578, 490 A.2d 231, 234 (1985); *Attorney Griev. Comm'n v. Miller,* 301 Md. 592, 602, 483 A.2d 1281, 1287 (1984). Thus we overrule Petitioner's exception.

### (B)

In the Mwangi complaint, the Commission charged Respondent with violation of DR1–102(A)(1)(4)(5)(6); DR6–101(A)(2)(3); and DR7–101(A)(1)(2)(3).[2]

■ With respect to this complaint, Judge Ward found as facts:

"1. Mr. Mwangi retained Mr. Singleton to perfect his Tax Sale Certificate with respect to 1110 West Lafayette Avenue, and to follow up his action with a Petition to Foreclose the Right of Redemption, and otherwise perfect title in ownership of the property in question;

2. The Tax Sale Certificate was assigned to Mr. Mwangi on or about January 7, 1981 with respect to property No. 1110 West Lafayette Avenue, City of Baltimore;

3. The deadline for filing the Petition to Foreclose the Right of Redemption, in accordance with Maryland law, Article 81, Section 100, would have been January 7, 1983. The Petition To Foreclose the Right of Redemption was not filed timely, and, in fact, has never been filed;

4. Both Mr. Mwangi and Mr. Singleton were aware of the requirements of the Code with respect to the filing of a Petition To Foreclose the Right of Redemption within two years of the transfer of the Tax Sale Certificate. Mr. Singleton was aware that he was unfamiliar with the procedures with respect to the redemption of tax sales, but failed to adequately consult and/or prepare the prop-

---

2. *See* Disciplinary Rules at note 1.

er papers and undertake the proper procedures necessary under the circumstances;

5. On May 16, 1983, Mr. Singleton was made aware by Mr. Mwangi that the property was again listed by the City of Baltimore for tax sale purposes, and Mr. Singleton told Mr. Mwangi that he should take care of it, indicating that Mr. Mwangi had nothing to worry about.

Despite the fact that Mr. Singleton was aware of his own lack of expertise, he sent a client to the tax sale authorizing him to pay a certain amount for the redemption of the property in order to try to apparently correct his earlier error and failures with respect to the redemption of 1110 West Lafayette Avenue. The property was not purchased at tax sale by Mr. Singleton's representative. Mr. Singleton failed to go to the sale in question himself, alleging that he was unfamiliar with the procedures. Mr. Singleton failed to take qualified counsel with him to assist him in the purchase of the property in question on May 16, 1983;

6. As a result of the above, Mr. Mwangi has failed to receive a perfected title to 1110 West Lafayette Avenue, and the property was subsequently sold to others.

Mr. Singleton's failures clearly show that under the circumstances he failed to take the necessary legal actions to perfect the title to property No. 1110 West Lafayette Avenue in accordance with the law. The charge of DR6–101A(2), that is, failing to handle a legal matter without preparation adequate in the circumstances, is clearly sustained.

Following his retention by Mr. Mwangi to handle the legal matter entrusted to him, Mr. Singleton neglected the matter, and on two distinct occasions failed to take proper legal actions to protect his client's interests. Therefore, the Petitioner has sustained DR6–101A(3), namely, showing that Mr. Singleton neglected a legal matter entrusted to him, namely, the attempt to perfect title in Mr. Baye B. Mwangi to 1110 West Lafayette Avenue, in the City of Baltimore."

The Commission excepts to the failure of Judge Ward to find that Respondent violated DR1–102(A)(4), engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. While Judge Ward did find that Respondent violated DR6–101(A)(2) and DR6–101(A)(3), he did not conclude that Respondent had misrepresented the status of the tax sale foreclosure suit to Mr. Mwangi. We believe this exception is well taken and will sustain it. As pointed out by the Commission, the trial judge found as a fact that Mr. Mwangi, at no time, was given accurate information as to the present status of 1110 West Lafayette Avenue. Furthermore, through failure to answer the Commission's Request for Admissions of Fact, Mr. Singleton admitted that he "indicated to Mr. Mwangi on several occasions prior to May 16, 1983 that the foreclosure proceedings were pending." *See* Md. Rule 2–424(b).

There remains only the matter of an appropriate sanction. Respondent has been found in violation of certain Disciplinary Rules, mainly concerning neglect, but also of one instance of misrepresentation. We are advised that Respondent was issued a private reprimand by the Review Board on July 8, 1982 for violation of DR6–101(A)(3), neglect, in two separate matters.

The Commission recommends at least a 90-day suspension. Respondent's attorney recommends a public reprimand. We believe that what Judge O'Donnell stated for the Court in *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556 (1975), is equally applicable here. There, in pertinent part, the Court said:

"Where an attorney has been shown to have been negligent, or inattentive to his client's interests, or to have exhibited a lack of professional competency in the handling of a client's affairs, in violation of the canons or of a statute, the imposition of some disciplinary sanction against him may be warranted; the extent of the discipline to be applied, however, is generally dependent upon the severity of the conduct and the particular facts and circumstances surrounding it. In determining the degree

of discipline to be imposed for such conduct, it has been held proper not only to consider such circumstances as might mitigate or extenuate the offense, but also proper to consider the attorney's prior history of misconduct and any antecedent sanctions which may have been imposed. *See* Annot. 96 A.L.R.2d 823, 828–29, 853, *supra. Cf. Bar Assoc. of Balto. City v. Dearing,* 274 Md. 66, 332 A.2d 649 (1975) (where neglect, without any prior history of misconduct, was found to be grounds for a one-year suspension.)"

*See also Attorney Grievance Commission v. Marano,* 299 Md. 633, 474 A.2d 1332 (1984); *Attorney Grievance Commission v. Montgomery,* 296 Md. 113, 460 A.2d 597 (1983); *Attorney Grievance Commission v. Heinze,* 293 Md. 193, 442 A.2d 570 (1982); *Attorney Grievance Commission v. Finnesey,* 283 Md. 541, 391 A.2d 434 (1978); *Attorney Grievance Commission v. Collins,* 295 Md. 532, 457 A.2d 1134 (1983).

It appears to us that the prior private reprimand of the Review Board in 1982 had little or no effect on Respondent.

██ We shall in this case suspend Respondent indefinitely. This suspension is without prejudice to Singleton's right to petition us for reinstatement any time after forty-five (45) days from the date of this suspension. In making such application he must understand that he will be reinstated only if he meets the following conditions:

1—He shall in cooperation with Bar Counsel work out a program with Bar Counsel for having his practice monitored with submission of such periodic reports to Bar Counsel as Bar Counsel may require.

2—He shall pay all costs incurred in connection with this proceeding.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COST OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE

ATTORNEY GRIEVANCE COMMISSION AGAINST HERBERT LOUIS SINGLETON, JR.