517 A.2d 735

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**William Herbert BRAIN.**

**Misc. Docket (Subtitle BV) No. 48, Sept. Term, 1985.**

Court of Appeals of Maryland.

Nov. 24, 1986.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel, Annapolis, for the Atty. Grievance Com'n of Maryland, for petitioner.

William Herbert Brain, Wheaton, pro se.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

PER CURIAM.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against William Herbert Brain, alleging violations of the disciplinary rules of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9 b, to Judge L. Leonard Ruben of the Circuit Court for Montgomery County to make findings of fact and conclusions of law. After conducting an evidentiary hearing, Judge Ruben filed detailed findings and conclusions as follows:

## "FINDING OF FACT

"The Respondent was admitted as a member of the Bar of this Court on July 7, 1969, and previously maintained an office for the practice of law at 11141 Georgia Avenue,

Wheaton, Maryland. He currently maintains an office at 11400 Roland Drive, Potomac, Maryland.

"A. Complaint of Rosemary DeGrandchamp BC Docket No. 85–221–17–2

"1. Complainant DeGrandchamp was subpoenaed to appear at this hearing. Complainant filed an affidavit that as an out-of-state witness, she would choose not to appear. The Petitioner proceeded with the Respondent as the only witness.

"2. In June, 1984, Mrs. DeGrandchamp retained the Respondent in connection with a divorce. She paid the Respondent $250.00. Respondent was directed to prepare a separation agreement.

"3. In July, 1984, Mrs. DeGrandchamp revisited the Respondent's office to review the separation agreement. The Respondent was directed to correct several errors, and then mail the finished product to Mrs. DeGrandchamp's husband forthwith.

"4. The Respondent admitted that between August, 1984, and August, 1985, he had misplaced Mrs. DeGrandchamp's file, had not mailed the agreement as requested by his client, and had not informed her of the situation. In response to Mrs. DeGrandchamp's inquiries between August, 1984, and February, 1985, he told her he was working on the case, when in fact he did not know where the file was located. The Respondent never mailed the separation agreement as requested by his client.

"5. In February, 1985, Mrs. DeGrandchamp contacted the Attorney Grievance Commission. Following the inquiry by the Commission, the Respondent refunded $250.00 to Mrs. DeGrandchamp. She then retained other legal counsel to pursue her separation.

"B. Complaint of Rannie Cousar, Jr. BC Docket No. 85–155–16–2

"6. In May, 1984, Mr. Cousar retained the Respondent in connection with his divorce case. He paid the Respondent

$500.00. He also gave the Respondent the Complaint and a Show Cause Order with which he had been served.

"7. Respondent filed a Motion Ne Recipiatur and To Strike, and an Answer and a Cross-Bill of Complaint. The Respondent and Mr. Cousar went to the courthouse to attend a hearing on only one occasion, however, no hearing was actually scheduled on that day.

"8. The Respondent did not attend the Show Cause hearing. He indicated that he was waiting for a hearing on the Motion Ne Recipiatur to be set. The Respondent filed exceptions to the Master's report and a hearing was scheduled for October, 1984. The Respondent did not attend the hearing. Mr. Cousar testified that as a result of the divorce proceedings, his ex-wife was successful on all aspects of her complaint for divorce.

"9. The Respondent indicated that although he had represented one or perhaps two other clients in Prince George's County divorces, he had not handled a contested divorce in Prince George's County before Mr. Cousar's case.

"10. On June 30, 1984, Mr. Cousar retained the Respondent to represent him in connection with an automobile accident which occurred on June 29, 1984. Within several weeks, Mr. Cousar delivered to the Respondent a copy of the police report identifying the potential defendants.

"11. During the month of July, 1984, Mr. Cousar incurred approximately $400.00 in medical bills and lost $1,000.00 in wages due to missed employment. By August, 1984, Mr. Cousar informed the Respondent that he was feeling almost completely well.

"12. Between August, 1984, and April, 1985, the Respondent claims that he was monitoring the case. The Respondent obtained medical release forms but did not attempt to secure medical records. The Respondent did not write letters to the potential defendants as identified from the police report. The Respondent did not pursue the issue of potential PIP benefits.

"13. Ms. Gina Guston of Hartford Insurance Company testified that she repeatedly telephoned the Respondent regarding the case, but he did not return the calls. Ms. Guston represented one of the potential defendants. Ms. Guston wrote to the Respondent in February, 1985, but he did not respond.

"14. In April, 1985, Mr. Cousar requested that the Respondent withdraw from the case and he complied. Mr. Cousar then settled the case on his own with Hartford Insurance Company for $3,500.00.

"15. The Respondent only called himself to testify as a witness on his behalf in response to the Grievance Commission Petition. The Respondent's testimony is incorporated in the foregoing Finding of Fact.

### "CONCLUSIONS OF LAW

"A. Complaint of Rosemary DeGrandchamp BC Docket No. 85–221–17–2

"The Court finds from the above facts that the Respondent did violate Disciplinary Rules 1–102, 6–101, and 7–101.

*"Disciplinary Rule 1–102*

'Misconduct.

A.   A lawyer shall not:

(1) Violate a Disciplinary Rule.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.'

*"Disciplinary Rule 6–101*

'Failing to Act Competently.

A.   A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without

associating with him a lawyer who is competent to handle it.

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him.'

*"Disciplinary Rule 7–101*

'Representing a Client Zealously

A.   A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonable available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Discplinary Rule, however, by acceding to reasonable requests of opposing counsel which did not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR2–110, DR5–102, and DR5–105.

(3) Prejudice or damage his client during the course of the professional relationship except as required under DR7–102(B).'

"The Petitioner called the Respondent as the only witness. The Respondent admitted that between August, 1984, and August, 1985, he had lost his client's file. Respondent admitted that in response to telephone inquiries, he told his client he was working on the matter, when in fact he did not know where the file was located. The Court finds that the Respondent did violate Disciplinary Rules 6–101 and 7–101 in that he neglected a legal matter entrusted to him and failed to carry out a contract of employment. In so doing, he is also in violation of Disciplinary Rule 1–102.

"B.   Complaint of Rannie Cousar, Jr. BC Docket No. 85–155–16–2

"The Court finds from the above facts that Respondent did violate Disciplinary Rules 1–102, 6–101, and 7–101 (Disciplinary Rules, *supra*).

"The Petitioner presented the testimony of the Complainant, an insurance company employee, and the Respondent. In the divorce matter, it is clear that the Respondent violated Disciplinary Rules 6–101 and 7–101 in that the Respondent neglected a legal matter entrusted to him and failed to carry out a contract of employment.

"In the automobile accident matter, the Respondent violated Disciplinary Rules 6–101 and 7–101 in that he flagrantly neglected a legal matter entrusted to him, failed to seek the lawful objectives of his client, and failed to carry out a contract of employment.  In violating these rules, the Respondent is also automatically in violation of Disciplinary Rule 1–102."

The Respondent did not except to any of Judge Ruben's findings.  He did, however, appear before us during oral argument and suggest that a reprimand was the appropriate sanction.

Bar Counsel took exception to Judge Ruben's failure to find a violation of DR 1–102(A)(4) in the DeGrandchamp complaint, *i.e.*, that Respondent engaged "in conduct involving dishonesty, fraud, deceit, or misrepresentation."  Bar Counsel recommends that the Respondent be suspended from the practice of law for six months.  He points out that Respondent had earlier been reprimanded on June 5, 1985 for misconduct occurring in 1982 and 1983 involving failure to file suit on behalf of a client.  Bar Counsel states that the Review Board found that Respondent had no functioning, operable system of markup, inventory of cases, case management, deadline management or any other system that would insure that deadlines were met.  Bar Counsel suggests that the prior reprimand made no impression upon Respondent since he indicated in the present case, in answer

to interrogatories, that he was never previously formally disciplined.

We shall sustain Bar Counsel's exception since Respondent's misrepresentation in the DeGrandchamp matter is manifest. As to the other disciplinary charges, we shall accept Judge Ruben's findings of fact and conclusions of law.

In determining the appropriate sanction in this case, we consider whether any mitigating or extenuating circumstances have been shown with respect to the Respondent's misconduct, as well as his prior history of professional misconduct. *See Attorney Griev. Comm'n. v. Singleton,* 305 Md. 259, 503 A.2d 714 (1986). No mitigating or extenuating circumstances have been shown in this case, and we think the appropriate sanction is ninety days' suspension from the practice of law, to begin thirty days from the date of the filing of the opinion in this case. Prior to termination of the suspension, the Respondent shall pay all costs of the disciplinary proceeding.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WILLIAM HERBERT BRAIN.